David J. Kaminski, Esq. (CA SBN 128509)
*Admitted Pro Hac Vice*
kaminskid@cmtlaw.com
Stephen A. Watkins, Esq. (CA SBN 205175)
*Admitted Pro Hac Vice*
**CARLSON & MESSER, LLP**
5901 West Century Boulevard, Suite #1200
Los Angeles, CA 90045
Tel: (310) 242-2200
Fax: (310) 242-2222

Attorneys for Defendant,
NATIONAL CREDIT SERVICES, INC.

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROSALYNE SWANSON, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL CREDIT SERVICES, INC,<br><br>Defendant. | ) CASE NO. 2:19-cv-01504-RSL<br>)<br>) **DEFENDANT NATIONAL CREDIT**<br>) **SERVICES, INC.'S OPPOSITION TO**<br>) **PLAINTIFF'S MOTION FOR**<br>) **CLASS CERTIFICATION**<br>)<br>) **NOTED ON MOTION**<br>) **CALENDAR: February 4, 2022**<br>)<br>) **Oral Argument Requested**<br>)<br>)<br>) |

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 1

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND FACTS.......................................................................................2

        A.      Plaintiff Called Into the DOE and Provided Her Phone Number ...........2

        B.      NCS Calls Plaintiff for the First Time ...................................................2

        C.      NCS' TCPA Compliance policies ...........................................................3

III.    LEGAL STANDARD...........................................................................................5

IV.     ARGUMENT ........................................................................................................6

        A.      Plaintiff's Claims Are Not Typical of Those of the Proposed Class, Rendering

                Her an Inadequate Class Representative...................................................6

        B.      Plaintiff Cannot Establish Commonality or Predominance ...................10

        C.      Plaintiff Cannot Save Her Class With a Narrower Class Definition .....15

        D.      Plaintiff's Class Lacks Superiority. ......................................................16

                1.      Plaintiff's Class is Unmanageable Due to Mini Trials Required

                        Regarding Prior Express Consent ..............................................16

                2.      Small Claims Court is a Viable Option for Putative Class Members ........17

        E.      Plaintiff's Request For Additional Discovery Should Be Denied .........18

V.      CONCLUSION....................................................................................................19

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 2

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

**TABLE OF AUTHORITIES**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................6,17

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013),
    1194–95, 185 L.Ed.2d 308 (2013) ...................................................14

*Bee, Denning, Inc. v. Capital Alliance Group*,
    310 F.R.D. 614 (S.D. Cal. 2015) ....................................................15

*Blair v. CBE Grp., Inc.*,
    309 F.R.D. 621 (S.D. Cal. 2015) ....................................................14

*Booth v. Appstack, Inc.*,
    2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ..........................16

*Brown v. DirecTV, LLC*,
    330 F.R.D. 260 (C.D. Cal. 2019) ....................................................14

*Cashatt v. Ford Motor Co.*,
    2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)...........................16

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)........................................................................5, 11

*Connelly v. Hilton Grand Vacations Co., LLC*,
    294 F.R.D. 574 (S.D. Cal. 2013) ....................................................12

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ....................................................15

*Davis v. AT&T Corp.*,
    No. 15CV2342-DMS (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017)...................12

*Dunakin v. Quigley*,
    99 F. Supp. 3d 1297 (W.D. Wash. 2015) ......................................14

*Donaca v. Dish Network, LLC.*
    303 F.R.D. 390 (D. Colo. 2014) .....................................................17

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 3

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................15

*Fosmire v. Progressive Max Ins. Co.*,
    277 F.R.D. 625 (W.D. Wash. 2011). ...............................................5

*General Telephone Company of the Southwest v. Falcon*,
    102 S.Ct. 2364 (1982)..............................................................................5

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)...............................................................6

*Hartman v. United Bank Card Inc.*,
    2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ...............................12

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ...............................................................8

*Jeffrey Katz Chiropratic, Inc. v. Diamond Respiratory Care, Inc.*,
    No. 20-CV-04108-CRB, 2021 WL 5848075 (N.D. Cal. Dec. 9, 2021) .....................12,17

*Kim v. Sussman*,
    2004 WL 3135348 (Ill. Cir. Ct. 2004) ...........................................17

*Martinez v. Adir Int'l LLC*,
    No. CV1405505ABPLAX, 2015 WL 12670519 (C.D. Cal. July 7, 2015) .......................8

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) .................................................. 1,7,14

*O'Connor v. Boeing N. Am., Inc.*,
    197 F.R.D. 404 (C.D. Cal. 2000)

*Saulsberry v. Meridian Fin. Servs., Inc.*,
    2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ...........................................1,7

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...........................................16

*Sherman v. Yahoo! Inc.*,
    No. 13CV0041-GPC-WVG, 2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ...................12

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 4

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

*Smith v. Microsoft Corp.*,
    297 F.R.D. 464 (S.D. Cal. 2014) ............................................................17

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ...............................................................7

*Taylor v. Universal Auto Grp. I, Inc.*,
    No. C 13-5245 KLS, 2014 WL 2987395 (W.D. Wash. July 1, 2014).............13

*Trenz v. On-LineAdministrators, Inc.*,
    No. 2:15-CV-08356-JLS-KS, 2020 WL 5823565 (C.D. Cal. Aug. 10, 2020). ...........12,13

*United Steel v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010). ...............................................................5

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ...............................................................13

*Yahoo! Inc.*, No. 13CV0041-GPC-WVG,
    2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ..........................................

*Wagafe v. Trump*,
    No. C17-94 RAJ, 2018 WL 1737939 (W.D. Wash. Apr. 11, 2018)................18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011). ....................................................................5,9,14

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ...............................................................11

*Williams v. PillPack, LLC*,
    No. 19-5282 RJB, 2021 WL 5113467 (W.D. Wash. Nov. 3, 2021) ........................2,9,12

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ..........................................................16

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001). ...........................................................5,11,16

**STATUTE AND RULES**

Fed. R. Civ. P. 23(b) ........................................................................7
Fed. R. Civ. P. 23(c)(1)(A) ................................................................16
47 U.S.C. §227(b)(1)(A). ...................................................................7
LR 23(i)(3) ......................................................................................18

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 5

LCR 7(j) ................................................................................................................18

**<u>OTHER</u>**

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.
Rcd. 559 (2008) .....................................................................................................1

137 Cong. Rec. 30720 (1991) ..............................................................................17

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 6

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

1

2

## I. **INTRODUCTION**

3

Not once in Plaintiff Rosalyne Swanson's ("Plaintiff") Motion for Class Certification

4

does she acknowledge that she provided her (678) 396-8951 ("8951") phone number to the

5

Department of Education ("DOE") before Defendant NCS ("NCS") made a call to her phone

6

number to collect a debt owed to the DOE. The DOE hired NCS to collect upon Plaintiff's

7

unpaid federal student loan.

8

"[P]rior express consent is consent to call a particular telephone number in connection

9

with a particular debt that is given *before* the call in question is placed." *Meyer v. Portfolio*

10

*Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (emphasis added). "Calls placed by

11

a third party collector on behalf of that creditor are treated as if the creditor itself placed the

12

call." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23

13

F.C.C. Rcd. 559, 565 (2008).

14

Thus, a third party debt collector has prior express consent before a call as long as the

15

creditor has such consent. *See Saulsberry v. Meridian Fin. Servs., Inc*., 2016 WL 3456939, at *6

16

(C.D. Cal. Apr. 14, 2016) (citing the 2008 FCC Order for the proposition that "Saulsberry

17

consented to calls regarding his debt to [creditor] Shell when he provided them his phone

18

number, and **this consent extends to both Shell and any third-party collector acting on**

19

**behalf of Shell**.")(emphasis added).

20

By providing her cell phone number to the DOE in connection with Plaintiff's student

21

loan debt held by the DOE, Plaintiff consented to collection calls by NCS on behalf of the DOE

22

Therefore, Plaintiff's misleadingly labeled "No Consent Class" that Plaintiff seeks to

23

certify, of persons who "had their cellphone number obtained by NCS in the same way that NCS

24

obtained Plaintiff's cellphone number," cannot possibly meet the Rule 23 elements for

25

certification. NCS "obtained" Plaintiff's cell phone number from the DOE when the account

26

was assigned to NCS because it was available to NCS from the system of a third party DOE

27

contractor. Also, NCS legally inured to the benefit of consent already provided to the DOE.

28

Finally, NCS "obtained" Plaintiff's 8951 number as part of an update file sent by the DOE. Therefore, Plaintiff's class cannot satisfy Rule 23 for the following reasons:

1) Plaintiff seeks to certify a class of all persons who "had their cellphone number obtained by NCS" via a third party vendor and called via the calling platform used to call Plaintiff. This class includes both persons who provided their number to the DOE (like Plaintiff) and those that did not. Plaintiff lacks typicality and adequacy to represent the persons who did not provide their cellphone number to the creditor (the DOE). Her class also lacks commonality and predominance due to the individualized inquiries regarding prior express consent. These issues include whether the cell phone number was provided to the DOE before the same cell phone number was obtained via a third party vendor and called and if/when NCS obtained prior express consent during the first live call with the borrower.

2) Plaintiff cannot save her class by limiting it to only those persons NCS called where NCS "obtained" the cell phone number via a third party vendor and the same number was also provided to the DOE. Such a class lacks commonality and predominance due to the individualized inquiries regarding the issue of prior express consent. These issues include whether the cell phone number was provided to the DOE before the same cell phone number was obtained via a third party vendor and called, and if/when NCS obtained prior express consent during the first live call with the borrower. It is also an overbroad class whereby many in the class would have provided prior express consent.

A TCPA plaintiff is not typical of a class of both persons who provided consent and those that did not. *See, e.g., Williams v. PillPack, LLC*, No. 19-5282 RJB, 2021 WL 5113467 (W.D. Wash. Nov. 3, 2021) (decertifying class).

Plaintiff's Motion should be denied in its entirety.

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 2

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

## II.   BACKGROUND FACTS

### A.   Plaintiff Called Into the DOE and Provided Her Phone Number

Plaintiff obtained a federal student loan from the DOE on or about October 27, 2008. (Declaration of Nick Myrben ¶ 23, Ex. 2.)  On November 22, 2017, Plaintiff called into the DOE's "Default Resolution Group", operated by third party contractor Maximus.  (Myrben Decl. ¶¶ 17-18, 26-35, Exs. 3-4; Declaration of Stephen Watkins, ¶ 2, Ex. 1, Plaintiff's Response to Interrogatory No. 14.)  In this call she sought to discuss potential rehabilitation of her loan. (Myrben Decl. ¶ 32. Ex. 4); She provided her 8951 cell phone number as follows:

```
DOE:        Thank you ma'am.  On this account I see you verified your email
            and there is a phone number that I have on file 404-207-5626, is that still a good
            phone?
Swanson:    No.
DOE:        No, ok, what's your new phone?
Swanson:    678
DOE:        678
Swanson:    396
DOE:        678
Swanson:    396
DOE:         296?
Swanson:    396
DOE:        ok 396
Swanson:    8951
DOE:        8951.  Is that a cell phone, by any chance?  A mobile phone?
Swanson:    yes
ED:         ok, any other phones you'd like to add on?
Swanson:    no.
```

(Myrben Decl. ¶ 32, Ex. 4.)  In the ensuing conversation, Plaintiff sought information regarding possible loan rehabilitation.  (Myrben Decl. ¶ 32, Ex. 4.)   Plaintiff did not place restrictions on use of her cell phone number.  (Myrben Decl. ¶ 32 , Ex. 4.)

### B.   NCS Calls Plaintiff for the First Time

NCS is a small debt collection agency that generally collects upon unpaid student loan debts. (Myrben Decl. ¶ 2.)  As early as 2014, the DOE was one of NCS' largest clients,

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 3

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

1   accounting for approximately 98 percent of NCS business.  (Myrben Decl. ¶ 5.)  The remainder

2   of the business involved collection upon consumer accounts.  (Myrben Decl. ¶ 5.)

3          On or about January 26, 2019, the DOE placed Plaintiff's unpaid federal student loan

4   with NCS for collection. (Myrben Decl. ¶ 24.)   Upon placement, NCS had access to

5   Maximus/DOE records, including records that reflected that the 8951 number had been provided

6   to Maximus by Plaintiff on November 22, 2017.  (Myrben Decl. ¶¶ 25, 33-35.)

7          Plaintiff's 8951 number was not included in the initial datafile it received from the DOE

8   at that time.   (Myrben Decl. ¶ 36.)  On January 26, 2019, NCS obtained the 8951 number for

9   Plaintiff's via third party vendor IDI  (Myrben Decl. ¶ 37.)   NCS made 23 calls to the 8951

10  number  (Myrben Decl. ¶ 38, Ex. 1.)

11         **C.      NCS' TCPA Compliance policies**

12         As part of its TCPA compliance policies, NCS did not make calls via artificial or

13  prerecorded voice.  (Myrben Decl. ¶ 7.)  Nor did NCS make calls using an automatic telephone

14  dialing system ("ATDS").  (Myrben Decl. ¶ 8.)

15         Moreover, it was and is NCS' procedure to obtain prior express consent during the first

16  live communication with a borrower/consumer.  (Myrben Decl. ¶ 10.)  This consent would be

17  documented in NCS' collection system.  (Myrben Decl. ¶ 11.)

18         In this regard, in general, NCS would call three sets of cell phone numbers ¶ 12.):

19         1.      Cell phone numbers provided upon initial placement by the DOE for collection.

20  These cell phone numbers were typically provided by the borrowers in the promissory note

21  reflecting the federal student loan.  (Myrben Decl. ¶ 13.)

22         2.      Cell phone numbers obtained via third party vendor IDI.  (Myrben Decl. ¶ 16.)

23         3.      Cell phone numbers provided to the DOE after origination of the debt.  These cell

24  phone numbers would be provided by third party DOE contractor Maximus who maintains a

25  Debt Management Collection System ("DMCS") for the DOE that provides information

26  regarding borrowers.  (Myrben Decl. ¶ 17.)

27

28

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 4                              CARLSON & MESSER LLP
                                              5901 West Century Boulevard, Suite #1200
                                              Los Angeles, California 90045
                                              (310) 242-2200
                                              kaminskid@cmtlaw.com

The initial DMCS update file for a borrower would typically be received by NCS a few days after placement with NCS for collection.  (Myrben Decl. ¶ 20.) If NCS had already obtained the number via IDI, DMCS phone numbers that were duplicative of those numbers obtained via IDI would not be uploaded.  (Myrben Decl. ¶ 21.)

Therefore, although NCS received Plaintiff's number via vendor IDI, it also received the number from Maximus—however, the DMCS upload would not have uploaded Plaintiff's cell phone number into NCS' system as it already had the number via IDI.  (Myrben Decl. ¶¶ 39-40.)

## III.  LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citations & quotations omitted).

As held by the Supreme Court, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).) Certification is proper only if "the trial court is satisfied, **after a rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied."  *General Telephone Company of the Southwest v. Falcon*, 102 S.Ct. 2364, 2372 (1982).   While the Trial Court has broad discretion and flexibility in determining whether to certify a class, "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Id.*

"[T]he party seeking certification … bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2001).  "If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused."  *Fosmire v. Progressive Max Ins. Co*., 277 F.R.D. 625, 632 (W.D. Wash. 2011).

{00165612;1}

OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 5

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

The four requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

As to Rule 23(b), a plaintiff need only show that any one of the three described scenarios is satisfied. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3), and thus she must demonstrate that (1) "questions of law or fact common to class members **predominate** over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b) (emphasis added).

As shown below, Plaintiff's Motion absolutely fails to meet her burden under Rule 23.

## IV.   **ARGUMENT**

### A.   **Plaintiff's Claims Are Not Typical of Those of the Proposed Class, Rendering Her an Inadequate Class Representative.**

Plaintiff is not typical of her class of both persons who provided consent and those that did not. The typicality requirement looks to whether the claim of the class representative is typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). Moreover, Plaintiff's class action claims must be based on conduct which is not unique to him. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

"Class representation is inadequate if the named plaintiff … has an insurmountable conflict of interest with other class members." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010). "Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997)).

Here, Plaintiff's claims are not typical of those of the class she seeks to represent, and she faces unique defenses, which make her an inadequate class representative as a matter of law.

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 6

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

Plaintiff seeks to represent the following class:

> No Consent Class: All persons in the United States who, from September 19, 2015 through the date notice is disseminated, (1) Defendant caused to be called; (2) on the person's cellphone; (3) using the same dialing equipment that was used to call Plaintiff; (4) for the purpose of collecting a debt; and (5) **had their cellphone number obtained by NCS in the same way that NCS obtained Plaintiff's cellphone number**.

(Dkt 27 at 4:17-21) (emphasis added).

Plaintiff asserts that NCS obtained her cell phone number via a third party vendor. (Dkt 27 at 7:26-8:2.)

However, NCS obtained Plaintiff's cell phone three ways: (1) via third party vendor IDI; (2) because it was provided to the creditor DOE before the call at issue and upon placement, NCS had access to Maximus/DOE records containing the cell phone number; and (3) electronically via a DCMS file update. "Prior express consent" is a defense to a TCPA claim. *See* 47 U.S.C. §227(b)(1)(A). When the putative class members provided their telephone numbers to the DOE without restrictions to the contrary, they provided prior express consent to NCS. *See Meyer*, 707 F.3d at 1042; *Saulsberry*, 2016 WL 3456939, at *6.

Therefore, NCS asserts that Plaintiff's class definition at a minimum should be limited to those consumers whose cell phone number was obtained <u>both</u> via a third party vendor whereby the same phone cell phone number was provided to creditor the DOE. However, if the class definition is amended in this manner, the putative class still fails to meet the rigorous requirements of Rule 23.

Plaintiff may argue that her class consists of "persons whose cellphone number was obtained via [third party vendors]," regardless of whether the number was also obtained from the creditor the DOE, and that NCS did not "obtain" the number from the DOE until NCS actually received the number in a DCMS file update from Maximus. NCS asserts that the minute the DOE obtained consent, this provided prior consent for any debt collector retained by the DOE. *See, e.g., Saulsberry*, 2016 WL 3456939, at *6. Therefore NCS "obtained" the number at the time it was placed for collection. This is bolstered by the fact NCS would have had access to the

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 7

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

phone number through a third party Maximus portal at the time of assignment.  (Myrben Decl. ¶ 25.)

The persons who did not provide their cell phone numbers to the DOE but were obtained by NCS only via a third party vendor present different issues than Plaintiff, who provided to the DOE the same cell phone number that was obtained by NCS via third party vendor.  As a result, Plaintiff lacks typicality and adequacy, and certification should be denied.  *See Martinez v. Adir Int'l LLC*, No. CV1405505ABPLAX, 2015 WL 12670519, at *6 (C.D. Cal. July 7, 2015).   In *Martinez*, the plaintiff's son became delinquent on his credit card.  *Id.* at *3.  The defendant contacted the plaintiff's son's personal references, which he provided in his credit card application, which included the plaintiff.  *Id.*   Eventually, the defendant's representative erroneously updated the son's account information so that his primary cellular telephone number was listed as the plaintiff's cellular telephone number ending in 2748.  *Id.*   After receiving alleged autodialed calls on her cell phone, the plaintiff in *Martinez* brought a class action under the TCPA.  *Id.* at *1.

The Court in *Martinez* held that the plaintiff was not typical of the putative class members because the defendant had a policy of only contacting customers as part of their telemarketing and debt-collection campaigns, and plaintiff was not a customer.  *Id.* at *6. Accordingly, the issue of consent with respect to the plaintiff's experience differed dramatically as between customers and non-customers.  *Id.*  The Court in *Martinez* further held that plaintiff's proposed class action was not suitable for the nearly half of a million Curacao customers that had "provided express consent forms" (in contrast from to the lead plaintiff).  *Id.*

"Thus, even assuming Plaintiff's claims arise from the same purported course of conduct, the issues and facts surrounding Plaintiff's claims are unique."  *Id.*

Similarly, in *Williams*, 2021 WL 5113467, at *6, the Court decertified the class after determining the plaintiff was not typical of other class members who had provided consent.  The lead plaintiff was no longer a member of the originally certified class, so the plaintiff proposed the following new class definition:

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 8

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

> All persons or entities within the United States who between March 13, 2018 and June 16, 2019, received a non-emergency telephone call placed by Prospects DM promoting PillPack LLC's goods or services, as part of the PillPack Performance Media campaign:
>
>> (i) to a cellular telephone number through the use of an automatic telephone dialing system or artificial or prerecorded voice; or
>> (ii) to a cellular or residential telephone number that had been registered on the national Do Not Call Registry for at least 31 days and who received more than one call as part of the PillPack Performance Media campaign within any twelvemonth period.
>
> Excluded from the class are persons or entities: (1) whose telephone numbers were obtained from the www.rewardzoneusa.com, nationalconsumercenter.com, or surveyvoices.com websites operated by Fluent, Inc. between June 19, 2017 and May 3, 2019 or (2) whose calls were transferred to ExactCare Pharmacy but not PillPack.
>
> Transfers Sub-Class: All Class members who were transferred at least once to a PillPack call center on the Dialed Number Identification Service at: 866-298-0058.

*Id.* at *4.

In ruling on decertification, the Court in *Williams* held that the defendant, "contrary to the situation at the time the class was initially certified," had now shown that some of the class members, as newly defined, consented to be called by the defendant before the calls were made to them. *Id.* at *6. However, there was no evidence that the plaintiff had provided consent under the new class definition. *Id.* "Accordingly, the Plaintiff's claims have not been shown to be typical of the newly proposed class." *Id.* The Court decertified the class because plaintiff was no longer a member of the old class, and the new class definition could not meet the Rule 23 elements. *Id.*

In *Williams* and *Martinez*, the plaintiff was not typical of the customers who had provided consent and therefore lacked typicality. Our case is the converse—Plaintiff is not typical of any number called without consent obtained via a third-party vendor only. Therefore, she lacks typicality and adequacy to represent her purported class: (1) Persons called on cell

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 9

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

phone numbers obtained from third party vendors that were identical to cell phone numbers also obtained from the DOE and (2) persons called on cell phone numbers obtained from third party vendors that were never obtained from the creditor (the DOE).

NCS has evidence of other cell phone numbers called under similar circumstances to Plaintiff, whereby (1) the cell phone numbers were provided by the consumers to the DOE; (2), DOE placed the account for collection with NCS, and (3) NCS obtained  the same number from third party vendor IDI and called.  (Myrben Decl. ¶¶ 41-44, Exs. 5-6)   There are at least 3,308 accounts whereby there is an IDI cell phone number associated with a DMCS cell phone from Maximus/DOE.   (Myrben Decl. ¶¶ 45-46)  Because NCS no longer has access to the DOE's records, it cannot determine the date the cell phone numbers were provided to the DOE. (Myrben Decl. ¶ 47)  Therefore, determining whether or not these individuals provided prior express consent to be called before NCS' calls would require an individualized inquiry as to each putative class member's circumstances.   (Myrben Decl. ¶ 48.)

If Plaintiff concedes that her class of persons whose "cellphone number was obtained by NCS in the same way that NCS obtained Plaintiff's cellphone number" is limited to those whereby NCS (1) obtained the number from the DOE and (2) the same cell phone number via third party vendor, then such a class lacks commonality and predominance, as shown below.

## B.   Plaintiff Cannot Establish Commonality or Predominance.

Rule 23(a)(2) requires Plaintiff to show "questions of law or fact common to the class." Commonality requires Plaintiff to demonstrate that the class members have suffered the same injury, and this "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes* at 2551.

All of the putative class members' claims must depend on a common contention "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." *Id.*

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 10

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

Under Rule 23(b)(3), Plaintiff must also show that the common issues "predominate over any questions affecting only individual members." This "predominance criterion is even more demanding than [the commonality requirement of] Rule 23(a)." *Behrend*, 569 U.S. at 34. NCS analyzes commonality and predominance together, as the factors collectively inform whether it is feasible to decide the absent class member' claims in a single proceeding.

The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 544–45 (9th Cir. 2013) (citation & quotations omitted). Plaintiff cannot carry her burden on predominance by merely showing a "common nucleus of facts"; rather, Plaintiff must present a "suitable and realistic plan for trial of the class claims," and the Court "cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *Zinser*, 253 F.3d at 1189, 1192 (citation & quotations omitted).

Prior express consent is an affirmative defense, which the defendant typically has the obligation of proving, but at the class certification stage, Plaintiff must show that individual issues will not predominate. *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931-32 (9th Cir. 2018). Evidence of a consent defense in a TCPA class action will weigh against predominance. *Id.*

When prior express consent is not provided in a consistent manner, certification should be denied. The Ninth Circuit in *True Health* concluded that the defendant had provided evidence in the district court that its consent defenses as to certain claims "would be based on individual communications and personal relationships between [the defendant's] representatives and their customers" and that "[t]he variation in such communications and relationships" warranted denying class certification as to those claims. *Id.* at 932.

Courts routinely deny class certification in TCPA cases where, as here, individualized inquiries predominate regarding consent. Numerous decisions both in and out of this Circuit have denied TCPA class certification or decertified such classes in part because of

1  "individualized inquiries" related to whether or not the defendant had prior express consent to

2  call each putative class member.  *See, e.g., Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB),

3  2017 WL 1155350, at *2 (S.D. Cal. Mar. 28, 2017); *Connelly v. Hilton Grand Vacations Co.*,

4  LLC, 294 F.R.D. 574 (S.D. Cal. 2013);  *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG,

5  2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015); *Jeffrey Katz Chiropractic, Inc. v. Diamond*

6  *Respiratory Care, Inc.*, No. 20-CV-04108-CRB, 2021 WL 5848075, at *4 (N.D. Cal. Dec. 9,

7  2021); *Trenz v. On-Line Administrators, Inc.*, No. 2:15-CV-08356-JLS-KS, 2020 WL 5823565,

8  at *8 (C.D. Cal. Aug. 10, 2020) (decertifying class); *Williams*, 2021 WL 5113467, at *7

9  (decertifying class);  *Hartman v. United Bank Card Inc.*, 2012 WL 4758052, at *11-15 (W.D.

10  Wash. Oct. 4, 2012) (plaintiff failed to show commonality, typicality, and predominance because

11  individualized fact-finding would be necessary to determine which calls gave rise to liability

12  under Washington law).

13     Judge Bryan's decision in *Williams,* 2021 WL 5113467 at *7*, is instructive on this point.

14  The Court held that the alleged common contention "that opt-in to calls from third parties did not

15  constitute valid consent" ultimately did not resolve the question of consent for some members of

16  the class.  *Id.*  It noted that the defendant, who had the burden to prove its consent defense, had

17  pointed to evidence that some of the newly proposed class members consented to the calls.  *Id.*

18  The Court held that the defendant had shown that the opt-in language varied significantly on

19  these various websites.  *Id.* The Court held that an individualized examination of each of those

20  numbers and their opt-in websites would be required to determine whether the consent was

21  consistent with the TCPA.  *Id.*  The Court decertified the class in part due to of lack of

22  predominance.  In doing so, the Court reinforced the notion that how prior express consent is

23  provided varies from class member to class member, such a class lacks predominance.

24     As another example, in *Connelly*, 294 F.R.D. 574, the plaintiff claimed the defendant

25  Hilton used an ATDS to place millions of unsolicited telemarketing calls.  *Id.* at 576. In denying

26  certification because of predominating individual issues of consent, the court remarked that

27  defendants had "set forth a fairly strong argument that the differing circumstances under which

28

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 12

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

putative class members provided their cell phone numbers to Hilton are, at the very least, relevant to a determination of prior express consent." *Id.* at 578.

Similar to the above cases, there are two main ways in which NCS consumers provided consent, although the same numbers may have been obtained by NCS via a third-party vendor:

1)  The class members provided the number directly to the DOE after the initial transaction creating the debt; and

2)  The class member provided consent to NCS after a live call pursuant to NCS' procedures.

Therefore, Plaintiff's assertion that whether skip-tracing alone establishes prior express consent (Dkt 27 at 7:1-2) constitutes a "common issue" misses the point.   NCS obtained consent for many of the phone numbers called from the DOE.  FCC orders and rulings show that the transactional context matters in determining the scope of a consumer's consent to be contacted. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046  (9th Cir. 2017).

In our case, NCS asserts that Plaintiff's providing of 8951 number to the DOE constitutes prior express consent.  *See, e.g., Taylor v. Universal Auto Grp. I, Inc.*, No. C 13-5245 KLS, 2014 WL 2987395, at *4 (W.D. Wash. July 1, 2014) (granting summary judgment on TCPA claim for defendant although plaintiff argued that he only affirmed that his cell phone number "was a good number to reach me to let me know my vehicle was ready to pick up.")

Plaintiff's phone number was orally confirmed by the DOE, and the DOE in fact had a procedure to confirm demographic information during phone calls.  (Myrben Decl. ¶ 14.)  The DOE did not provide to NCS any skip-traced numbers.  (Myrben Decl. ¶ 15.)

Where consent is verbally provided as with Plaintiff, such oral communications may vary from class member to class member.  This creates individualized inquiries as to the scope of consent for each class member such that TCPA class certification should be denied.  *See, e.g., Trenz v. On-Line Administrators, Inc.*, No. 2:15-CV-08356-JLS-KS, 2020 WL 5823565, at *7 (C.D. Cal. Aug. 10, 2020) (decertifying TCPA class in part because "Class Members had differing verbal interactions with dealerships in which, as Defendants put it, some 'consented to

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 13

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

being called' "); *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) (need for extensive individual fact inquiries into express consent was apparent where each plaintiff, under varying circumstances, had different interactions with the creditors who ultimately called them). *See also Williams, supra* (decertifying TCPA class where consent was not obtained in a uniform manner).

Plaintiff may argue that the providing of the phone number after the initial transaction originating the debt does not constitute prior express consent as a matter of law, and as such constitutes a "common issue" under Rule 23.  Controlling case law demonstrates that where a consumer provided their cell phone number to the DOE after the initial transaction, it still establishes prior express consent under the TCPA for subsequent calls.  (*Meyer*, 707 F.3d at 1042); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 269 n.3 (C.D. Cal. 2019) (citing *Meyer* and holding "The Ninth Circuit did not intend to narrow prior express consent to call a cellular phone to occur only if a customer provided that number on an initial transaction or application for service.")

Regardless, such a legal determination on the merits is unsuitable for class certification.  Although "a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 131 S.Ct. at 2551.  "Rule 23 grants courts no license to engage in free ranging merits inquiries at the certification stage," *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013), 1194–95, 185 L.Ed.2d 308 (2013); *See also Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1331 (W.D. Wash. 2015) (same).

Therefore, Plaintiff's class presents individualized inquiries as to how the DOE verbally obtained consent for a minimum of 3,308 accounts relating to just one DMCS file update (Myrben Decl. ¶¶ 42-46)  NCS has at least 45 DMCS file update files.  (Myrben Decl. ¶ 49.)

Moreover, there would be an individualized inquiry as to determining which calls were made to class members by NCS after NCS obtained prior express consent during its first live contact call pursuant to its own policies and procedures.  Prior to 8/6/20, notations regarding

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 14

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

obtaining prior express consent were written freeform in the account notes before NCS moved to notating such consent electronically in its account system.  (Myrben Decl. ¶¶ 50-52)  NCS cannot determine if and when it obtained consent during the first live call for the class period prior to 8/6/20 without individualized review of its account notes.  (Myrben Decl. ¶¶ 54-55.) NCS has at least 269 accounts post 8/6/20 where the cell phone number was associated with IDI but also electronically notated as with consent in NCS's account notes.  (Myrben Decl. ¶ 53.)

Therefore, for each putative class member, it would have to be determined:

1.  Whether the class member provided his or her cell phone number to the DOE;

2.  <u>When</u> the class member provided his or her cell phone number to the DOE;

3.  The circumstances of the oral communication with the DOE whereby the class member provided their number to the DOE;

4.  Whether the class member provided his or her cell phone number orally during a call with NCS;

5.  <u>When</u> the class member provided his or her cell phone number orally during a call with NCS; and

6.  The dates and times of calls made to the class member.

Plaintiff's class lacks predominance and commonality.

**C.      Plaintiff Cannot Save Her Class With a Narrower Class Definition**

The Court is bound to class definitions provided in the complaint and absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604-605 (C.D. Cal. 2009); see also *Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 621 (S.D. Cal. 2015).

The primary exception to this principle is when a plaintiff proposes a new class definition that is narrower than the class definition originally proposed and does not involve a new claim for relief. *Bee, Denning, Inc.* at 621.

Plaintiff's class as defined by her lacks typicality and adequacy.  If Plaintiff attempts to limit her class to those persons whereby NCS obtained their cell phone number both via third

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 15

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

party vendor and via the DOE, her new class includes persons who could not possibly have suffered harm as they provided prior express consent.  In this regard, "no class may be certified that contains members lacking Article III standing."  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)).   "On this basis alone, the Court must deny the motion for class certification."  *Webb v. Carter's Inc.*, 272 F.R.D. 489, 500 (C.D. Cal. 2011).  "[A] class definition may be overbroad if it includes individuals who sustained no injury and therefore lack standing to sue." *Cashatt v. Ford Motor Co*., 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020); *Booth v. Appstack, Inc*., 2015 WL 1466247, at *15 (W.D. Wash. Mar. 30, 2015) ("[A] class definition that encompasses a substantial number of members who have no cause of action is not sufficiently 'precise, objective and presently ascertainable' to be certified.").

Any attempt to limit Plaintiff's class would result in a class of persons whereby many likely provided prior express consent.  Such a class is *per se* overbroad.

### E.   Plaintiff's Class Lacks Superiority.

Plaintiff also must show under Rule 23(b)(3) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To do so, she must describe how a trial of the class claims will provide a superior method for trying the case. See Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note (2003 Amendment) ("A critical need is to determine how the case will be tried."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192.  As shown below, Plaintiff cannot establish her proposed class is superior.

#### 1.   Plaintiff's Class is Unmanageable Due to Mini Trials Required Regarding Prior Express Consent

Plaintiff's Motion does nothing more than vaguely conclude class action treatment of her putative TCPA class is superior to individual litigation.  But the need to resolve myriad issues on a case-by case basis, as outlined above, raises intractable manageability issues that render class treatment inferior to individual adjudication.  *Zinser*, 253 F.3d at 1192 ("when the complexities

of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication").  As discussed above, adjudicating a consent defense for Plaintiff's class members would overwhelm this litigation.

### 2.  Small Claims Court is a Viable Option for Putative Class Members

TCPA plaintiffs generally do not need the class action procedure, which is necessary only for "claims that are potentially valid but which are so small in monetary terms that it is inefficient and impractical, if not impossible, to pursue them."  *Donaca v. Dish Network, LLC*., 303 F.R.D. 390, 401 (D. Colo. 2014) (citing *Amchem Prods*., 521 U.S. at 617).  That is not the case for statutory damages of $500 and potentially treble damages for each violation under the TCPA. 47 U.S.C. § 227(b)(3).  "While this sum may sound paltry, 'the TCPA's statutory remedy is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf[,]'" including in small claims court without an attorney. *Smith v. Microsoft Corp*., 297 F.R.D. 464, 469 (S.D. Cal. 2014) (quoting *Forman v. Data Transfer, Inc*., 164 F.R.D. 400, 404 (E.D. Pa. 1995)).

"[I]n enacting the TCPA, Congress expressly struck a balance that was designed to be both fair to the recipient and the [caller]. Congress believed that allowing an individual to file an action in small claims court to redress the nuisance of unsolicited [calls] and to recover a minimum of $500 in damages was an adequate incentive to address what is at most, a minor intrusion into an individual's daily life." *Kim v. Sussman*, 2004 WL 3135348, at *2 (Ill. Cir. Ct. 2004).  According to Senator Hollings, a sponsor of the TCPA: Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. 137 Cong. Rec. 30720, 30821-30822 (1991).

In line with this reasoning, the Court in *Jeffrey Katz Chiropractic, Inc. v. Diamond Respiratory Care, Inc*., No. 20-CV-04108-CRB, 2021 WL 5848075, at *5 (N.D. Cal. Dec. 9, 2021) recently denied certification of a TCPA class due to the availability of small claims court.

{00165612;1}
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION - 17

CARLSON & MESSER LLP
5901 West Century Boulevard, Suite #1200
Los Angeles, California 90045
(310) 242-2200
kaminskid@cmtlaw.com

1  The Court held that because meritorious individual claims might be resolved in small claims

2  court, the class action was not "superior to other available methods for fairly and efficiently

3  adjudicating the controversy." *Id.*

4      As small claims court is available for the putative class members in our case, Plaintiff's

5  class lacks superiority.

6  **E.      Plaintiff's Request For Additional Discovery Should Be Denied**

7      Plaintiff also asks that, to the extent the Court determines further evidence is necessary

8  for the purposes of establishing any element of Rule 23(a), (b)(2), or (b)(3) or to counter any

9  opposition raised by Defendant, the Court defer consideration of this motion pending discovery

10 on the relevant issues, followed by supplemental briefing with evidence pursuant to LR 23(i)(3).

11 LR 23(i)(3) provides in pertinent part:

12
13     Within one hundred eighty days after the filing of a complaint in a class action,
       unless otherwise ordered by the court or provided by statute, the plaintiff shall
14     move for a determination under Fed. R. Civ. P. 23(c)(1), as to whether the case is
       to be maintained as a class action. This period may be extended on motion for
15     good cause. The court may certify the class, may disallow and strike the class
       allegations, or may order postponement of the determination pending discovery or
16     such other preliminary procedures as appear appropriate and necessary in the
       circumstances. Whenever possible, where the determination is postponed, a date
17     will be fixed by the court for renewal of the motion.

18 LR 23(i)(3).

19     Any such motion "should, whenever possible, be filed sufficiently in advance of the

20 deadline to allow the court to rule on the motion prior to the deadline." *Wagafe v. Trump*, No.

21 C17-94 RAJ, 2018 WL 1737939, at *3 (W.D. Wash. Apr. 11, 2018) (citing LCR 7(j)).

22     Plaintiff has not filed a motion, but buries a conditional request in her motion.  This does

23 not satisfy LRC 7(j).  Plaintiff has made no showing of "good cause".  This case was stayed for

24 by agreement of the parties.  In the parties' joint request to reopen this action,  Plaintiff did not

25 identify in the parties' joint submission that she needed additional class discovery.

26     "To follow [Plaintiff's] approach would relegate class certification to a moving target

27 subject only to [Plaintiff's]  control and completely ignore the established Local Rule of this

28

1    Court." *Wagafe*, 2018 WL 1737939, at *4.

2        Plaintiff's request should be denied.

3

4    **V.   CONCLUSION**

5        Plaintiff cannot represent a class of persons whereby NCS obtained their cell phone

6    number via a third party vendor because such a class that includes both persons who provided the

7    same cell phone number to the DOE (such as Plaintiff) and persons who did not.  Even a limited

8    class of persons whereby NCS obtained their cell phone number via a third party vendor and who

9    provided the same cell phone number to the DOE presents individualized inquiries regarding

10   prior express consent and is *per se* overbroad. For these reasons, Defendant respectfully requests

11   that the Court deny Plaintiff's Motion for Class Certification in its entirety.

12

     DATED:  January 31, 2022                **CARLSON & MESSER, LLP**
13

14

15                                   By:      /s/  *David J. Kaminski*
                                              David J. Kaminski
16                                            Stephen A. Watkins
                                              Attorneys for Defendant
17                                            NATIONAL CREDIT SERVICES, INC.

18

19

20

21

22

23

24

25

26

27

28

{00165612;1}
OPPOSITION TO MOTION FOR CLASS          CARLSON & MESSER LLP
CERTIFICATION - 19                      5901 West Century Boulevard, Suite #1200
                                        Los Angeles, California 90045
                                        (310) 242-2200
                                        kaminskid@cmtlaw.com

1

## <u>CERTIFICATE OF SERVICE</u>

2

3    I hereby certify that on the 31st day of January 2022, I electronically filed the foregoing

4    with the Clerk of the Court for the United States District Court, Western District of Washington

5    using the CM/ECF system, which will send notification of such filing to the following CM/ECF

6    participants:

7    Patrick Peluso
     WOODROW & PELUSO LLC
8    Email: ppeluso@woodrowpeluso.com
     Steven L. Woodrow
9    Email: swoodrow@woodrowpeluso.com
     *Attorneys for Plaintiff*

10

11   Michael P Matesky , II
     MATESKY LAW PLLC
12   Email: litigation@mateskylaw.com
     *Attorneys for Plaintiff*

13

14

15   Signed this 31st day of January 2022 at Los Angeles, CA

16

17                                                          /s/ David J. Kaminski
                                                            David J. Kaminski

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR CLASS                CARLSON & MESSER LLP
CERTIFICATION - 20                            5901 West Century Boulevard, Suite #1200
                                              Los Angeles, California 90045
                                              (310) 242-2200
                                              kaminskid@cmtlaw.com