UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSALYNE SWANSON, individually and on behalf of all others similarly situated, | No. C19-1504RSL |
| *Plaintiff*, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| *v.* | |
| NATIONAL CREDIT SERVICES, INC., a Washington corporation, | NOTE ON MOTION CALENDAR: Friday, February 4, 2022 |
| *Defendant*. | |

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

- 1 -

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

## I.  INTRODUCTION

As set forth in Plaintiff Rosalyne Swanson's ("Plaintiff" or "Swanson") Motion for Class Certification (dkt. 27), the requirements of Rule 23 are satisfied here and her claims under the Telephone Consumer Protection Act ("TCPA") are well-suited for class certification. In its response, Defendant National Credit Services, Inc. ("Defendant" or "NCS") asserts that a variety of Rule 23's requirements are not met in this case. However, undercutting each of its arguments is NCS's reliance on the fact that Swanson provided her number to a third-party contractor, Maximus, which NCS claims was enough to confer consent for NCS to place the calls at issue in this case. Leaving aside the merits question as to whether the alleged consent was adequate, Defendant's arguments attempt to subvert its own admission that NCS obtained Swanson's phone number via skip tracing. Defendant's *post hoc* discovery that Plaintiff gave her number to a third-party contractor nine years after her debt was incurred is not sufficient to retroactively confer consent for calls made to a phone number acquired via skip-tracing, and it is not enough to defeat class certification. As explained below, Plaintiff's proposed class meets the requirements of Rule 23 and should be certified.

As a preliminary matter, and before responding to Defendant's arguments as to class certification and the requirements of Rule 23, Plaintiff notes that the arguments made throughout the response brief in which NCS champions the strength of its consent defense are immaterial insofar as they do not pertain to the considerations of typicality or commonality. Consent is a critical facet of the merits analysis under the TCPA, and it is an affirmative defense for which Defendant bears the burden of proof—the time to determine the sufficiency of NCS's consent defense is not on a motion for class certification, and the Court should disregard these arguments as they are not relevant to the determination under Rule 23.

## II.  ARGUMENT

Defendant contends in response to the Motion that the requirements of typicality, adequacy, commonality, predominance, and superiority are supposedly lacking. Underlying each

**WOODROW & PELUSO, LLC**
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

1  of Defendant's arguments is the notion that its consent defense with regard to Plaintiff is

2  somehow unique and individualized such that the issues at hand are unsuitable for class-wide

3  determination. However, just like Plaintiff's claims, Defendant's consent defense can be resolved

4  on a class basis without resorting to subjective or individualized inquiries. The evidence of

5  record supports all of the enumerated requirements of Rule 23(a) and at least one section of Rule

6  23(b)(3), and, as explained below, the Court should grant Plaintiff's motion for certification.

7       **A.     Plaintiff's Claims Are Typical Of The Class She Seeks To Certify, And She Is**

8            **An Adequate Class Representative.**

9       Defendant's first attack on class certification asserts that Swanson's claims are not typical

10  of the class she seeks to represent, and thus she is supposedly an inadequate class representative.

11  However, Plaintiff's claim is typical of the alleged class: Defendant obtained her number via

12  skip tracing, as it did for thousands of debtors like her. Though NCS may assert a consent

13  defense applicable to a subset of several thousand debtors (including Plaintiff), even if

14  successful, such defense does not alter the underlying claim—shared by Swanson and all class

15  members—that Defendant violated the TCPA by making autodialed calls without consent to

16  persons whose numbers were obtained by NCS in the same manner.

17       The typicality requirements ensures that the class representative's claims resemble the

18  class's claims to an extent that adequate representation can be expected—typicality "does not

19  mean that the claims of the class representative[s] must be identical or substantially identical to

20  those of the absent class members." 5 NEWBERG ON CLASS ACTIONS, § 24.25 (3d ed. 1992);

21  *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Thus, "Plaintiffs need only show, as

22  they have done here, that their interests are compatible and not antagonistic to the interests of the

23  other class members." *Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1248 (D. Colo. 1983);

24  *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *see also Joseph v. General*

25  *Motors Corp.*, 109 F.R.D. 635, 639-40 ("It is to be recognized that there may be varying fact

26  situations among individual members of the class and this is all right as long as the claims of the

27  PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.                    - 3 -
28  No. C19-1504RSL

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

1 plaintiffs and other class members are based on the same legal or remedial theory." ). The test is

2 whether other class members have the same or similar injury and whether the action is based on

3 conduct that is not unique to the named plaintiffs. *Hanon v. Dataproducts Corp.,* 976 F.2d 497,

4 508 (9th Cir. 1992). "A finding of commonality will ordinarily support a finding of typicality."

5 *Barefield v. Chevron U.S.A., Inc.*, No. 86-CV-2427, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9,

6 1987).

7        Here, Plaintiff's claims are typical of those of the other class members. Swanson received

8 the same calls from NCS, using the same dialing system, that everyone else received after their

9 cellphone numbers were first acquired by NCS in the same way—skip tracing. Defendant does

10 not deny that it obtained Plaintiff's number via skip tracing; in fact, it plainly admitted as much

11 in deposition. (*See* 27-1 at 47:12-16) ("Through skip tracing we obtained the number."). Rather,

12 Defendant claims that it obtained the number in other ways as well, including by way of "access"

13 to records of a third-party contractor, Maximus, who obtained Plaintiff's number. (Dkt. 28 at

14 7:9–12.) This assertion is the foundation of NCS's consent defense: although Defendant obtained

15 and called Plaintiff's number as a result of skip tracing, NCS contends it had consent because it

16 was able to find records *post hoc* that she had given her number to Maximus, a third-party

17 contractor. Importantly, however, NCS did not obtain Swanson's phone number from Maximus

18 prior to placing any calls to Swanson—NCS only became aware of Swanson's phone call with

19 Maximus after this lawsuit was filed and the file transfer NCS received from Maximus prior to

20 placing calls to Swanson did not include the phone number at issue. (*See* Exhibit A, 25; 32-33.)

21        While the present motion is not the appropriate time to test the strength of Defendant's

22 consent defense, it is worth noting that the FCC has stated that "prior express consent is deemed

23 to be granted only if the wireless number was provided by the consumer to the creditor, and that

24 such number was provided during the transaction that resulted in the debt owed." *In the Matter*

25 *of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564–

26 65 (2008). Notwithstanding the fact that Plaintiff's number was obtained via skip tracing and

27 PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.

28 No. C19-1504RSL

- 4 -

called as a result of that acquisition (Defendant admitted as much), NCS's consent fails the

FCC's consent standard in two ways: (1) Plaintiff's number was provided to Maximus, a third-

party government contractor which is not the creditor; and (2) it was provided to Maximus in

2017, nine years after any transaction that resulted in the debt Swanson owed.[1] (*See* Dkt. 28 at

3:3–7.) Plaintiff recognizes that these arguments represent the merits of the case, and are not

suited to be raised in a motion for class certification, but the mere fact that Defendant has a

defense (which remains to be tested) does not defeat typicality. *See Wagner v. NutraSweet Co.*,

95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with

reference to the company's actions, not with respect to particularized defenses it might have

against certain class members.").

Further, NCS's defense is not unique to her in such a way that would render her atypical.

Defendant states that "[t]here are at least 3,308 accounts" where a number it obtained via skip

tracing was also contained in Maximus records. (Dkt. 28 at 10:7–9.) Plaintiff maintains that any

supposed consent obtained from Maximus is immaterial to any consumers whose numbers were

obtained via skip tracing (*see* dkt. 27-1 at 42:4–43:10, 45:14–23), and in any case the success or

failure of the defense can be resolved in one fell swoop for all 3,308 consumers. Indeed, this

defense and the infirmities identified above—such as whether Maximus, a third-party contractor,

is the "creditor"—can be resolved uniformly for all affected class members. The existence of a

subset of the overall class for whom Defendant has a consent defense does not render Plaintiff or

her claims atypical.

Likewise, Defendant cannot demonstrate that Swanson is inadequate to represent the

class. NCS's only argument against adequacy results from the perceived atypicality, but "only a

---

[1] Defendant cites two cases departing from the FCC's guidance that found consent could be
given after the initial transaction (dkt. 28 at 14:6–14), but that position is not universally
accepted, and the issue of consent relative to the transaction has resulted in a "split opinion
among practitioners and the courts." *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL
1744342, at *3 (N.D. Cal. Apr. 15, 2015).

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Joseph*, 109 F.R.D. at 640 (quoting 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638–39). "[T]he adequacy requirement mandates that no conflicts of interest exist between the named plaintiffs and the absent class members," *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006), and adequacy is only defeated by actual conflicts. *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979).

In short, both typicality and adequacy are satisfied here, and Plaintiff's class is suited for certification under Rule 23.

**B.    Commonality Is Satisfied, And The Common Issues Predominate Over Any Individualized Issues.**

Defendant next contends that requirements of commonality and predominance are not met here. NCS treats these two requirements as one, making virtually no argument whatsoever that commonality is satisfied. When viewed distinctly, the minimal requirement of commonality is easily met in this case. Predominance presents a more exacting standard, but the Court's conclusion should likewise be in the affirmative—the common questions underlying Plaintiff's claim predominate over any individual issues.

For commonality, Rule 23(a) requires questions of law or fact common to the class, such that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "When the claim arises out of the same legal or remedial theory, the presence of factual variables is normally not sufficient to preclude class action treatment." *Berlowitz v. Nob Hill Masonic Mgmt.*, No. 96-1241, 1996 WL 724776, *4 (N.D. Cal. Dec. 6, 1996). The commonality requirement has been described as "minimal" and "not high." *Kavu, Inc. v. Omnipak, Corp.,* 246 F.R.D. 642, 647 (W.D. Wash. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, common issues include whether the calls were placed using an automatic

telephone dialing system ("ATDS"), whether the calls were placed for purposes of collecting on a student loan debt, whether NCS had prior express consent to place the calls at issue, and whether NCS acted willfully, all of which are capable of class wide resolution. The alleged injury to Plaintiff and the class members is the same—that Defendant called them without prior express consent. NCS does not make any substantive argument as to why commonality is not satisfied.

Instead, Defendant's argument focuses on predominance. As outlined in Plaintiff's Motion, predominance is a similar, but more demanding, inquiry compared to commonality. *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 724 (N.D. Ill. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). Predominance requires that the common questions "represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (*quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). This does not, however, require the absence of any individual questions. *Id.* (citing *Dukes*, 131 S. Ct. at 2558). Individual issues do not preclude certification if the common issues "are more substantial than the issues subject to only individualized proof." *Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *8-9 (D. Colo. May 28, 2013).  Ultimately, the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 624.

The common questions identified above predominate in this matter. The heart of Plaintiff's claim and the class she seeks to certify turns on: (1) identification of the individuals called; (2) the type of phone called (i.e., a cellphone); (3) the dialing equipment used; (4) the purpose of the calls; and (5) any consent defense presented by Defendant. (*See* Dkt. 27 at 2.) The

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

first four parts of this inquiry are undisputedly common questions that can be resolved through

Defendant's records, without individual inquiry:

> (1)     NCS has the ability to identify all persons called using the same equipment, and
>
> where their phone numbers were obtained via skip trace, in the same manner as Plaintiff
>
> (Dkt. 27-1 at 40:10–41:3);
>
> (2)     NCS has the ability to identify which phone numbers it called that belong to
>
> cellphones, as opposed to landlines (Dkt. 27-1 at 79:19-22);
>
> (3)     NCS used a "DialConnect MobileComply" dialing system to place all of the calls
>
> at issue in this case (Dkt. 27-1 at 50:15-25; 51:1-6); and
>
> (4)     NCS placed all of the calls at issue in this case for the same purpose—to collect
>
> student loan debts. (Dkt. 27-1 at 45:6-13.)

Defendant argues that the fifth question listed above—its consent defense—presents an

individual issue that, according to NCS, is enough to defeat predominance. But the mere

existence of a consent defense is not, as Defendant claims, enough to defeat predominance. NCS

cites to *True Health* for the proposition that "[e]vidence of a consent defense in a TCPA class

action will weigh against predominance." (Dkt. 28 at 11:17–18) (citing *True Health*

*Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018)). The Ninth Circuit

made no such holding; in fact, the Court held quite the opposite:

> "The consent defenses that McKesson has advanced and for which it has provided
>
> supporting evidence may be sufficiently similar or overlapping to allow True Heath
>
> to satisfy the predominance requirement of Rule 23(b)(3) with respect to those
>
> defenses. If so, a class or subclass of plaintiffs to whom such defenses apply may
>
> be certified, provided of course that the other requirements of Rule 23 are also
>
> satisfied. . . .[T]here is little or no variation in the product registrations and the
>
> EULAs. For both of these asserted defenses, the predominance requirement of Rule

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.                        - 8 -
No. C19-1504RSL

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

23(b)(3) is therefore satisfied. Consent, or lack thereof, is ascertainable by simply examining the product registrations and the EULAs.

*Id.* at 932; *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party"). Thus, even a consent defense can be a common issue when it is based shared or uniform source.

Here, Defendant does not claim that the numbers obtained via skip tracing came with express consent, but rather that for some of the skip-trace numbers, NCS obtained consent in one of two ways: (1) via the consumer's provision of their number to Maximus "after the initial transaction creating the debt"; or (2) via provision of consent "after a live call" with NCS. (Dkt. 28 at 13:3–8.) Regardless of which method NCS claims for any particular called party, the issue of whether such methods are sufficient to confer prior express consent may be answered on a class-wide basis that would not require individual inquiry. As explained above, Plaintiff maintains that (notwithstanding the fact that Defendant called her from its skip-trace number logs and was unaware of any call with Maximus until after the filing of this lawsuit) any consent supposedly given to Maximus is faulty because it was not provided to the *creditor*, nor was it provided during the transaction resulting in the debt. These are questions related to the merits of Defendant's consent defense—they are not suited for resolution at the class certification stage, but they are and will be susceptible to class-wide resolution.

Following appropriate briefing on the issues, the Court can answer the common question, applicable to "at least 3,308" class members, as to whether consent purported to come from Maximus is adequate prior express consent under the applicable standard. (*See* Dkt. 28 at 10:7–8.) The same is true for Defendant's claim that some class members may have consented "after a live call"—the Court can make a determination as to

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

- 9 -

**WOODROW & PELUSO, LLC**
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

1  whether consent given *after* a call may be considered *prior* express consent in one strike,

2  for all such consumers to whom NCS may claim the defense applies. And, as the Ninth

3  Circuit stated in *True Health*, to the extent the Court finds it necessary, "a . . .subclass of

4  plaintiffs to whom such defenses apply may be certified".

5       Defendant's assertion that consent presents an individualized issue that

6  predominates over all common issues in this matter is unfounded. NCS's consent defense

7  is susceptible to class-wide resolution, and the Court will be able to make a decision on

8  the merits of the defense at the appropriate time and without devolving into individual

9  inquiry. Accordingly, both commonality and predominance are satisfied in this matter,

10  and Plaintiff's motion should be granted.

11      **C.**    **A Class Action Is The Superior Method For Resolving The Present**

12          **Controversy—Mini Trials Regarding Consent Are Not Necessary.**

13      As an extension of its arguments against typicality and predominance, NCS suggests that

14  superiority is not satisfied in this case, claiming that this matter is "unmanageable" and would

15  require mini-trials, and suggesting that small claims court is a superior option for individual

16  plaintiffs to seek restitution from Defendant. (Dkt. 28 at 17:13–19:5.) These arguments do not

17  win the day. Individual inquiries are not required to resolve Defendant's consent defense, and

18  while telemarketers would certainly stand to benefit from restricting TCPA plaintiffs to small

19  claims, class actions are decidedly the superior method of resolving such claims.

20      The manageability and superiority requirements involve consideration of factors such as

21  the class members' interests in individually controlling the prosecution of separate actions, the

22  desirability or undesirability of concentrating the litigation in one forum; and the likely

23  difficulties in managing a class action. FED. R. CIV. P. 23(b)(3). Defendant's first argument here

24  suggests that a class action would be unmanageable because it contends that consent is an

25  individualized issue that would "overwhelm this litigation." (Dkt. 28 at 17:2–3.)  But, as

26  explained above, NCS has provided two sources of consent, the strength for both which the

27  PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

28

     - 10 -

**WOODROW & PELUSO, LLC**
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

Court is capable of determining on a class-wide basis. The Court need not conduct mini-trials as to each and every instance of consent because, to the extent Defendant claims consent was provided by any particular group of class members, it can be assessed as a common question. For instance, Defendant has referred to "at least 3,308" accounts for which it asserts that it gained consent by way of Maximus possessing the phone numbers after a call. (Dkt. 28 at 10:7–8.) The Court is capable of determining in one strike whether such consent was sufficient when NCS placed calls to numbers obtained through skip tracing; there is no need for individual trials or inquiries, and no individual issues will "overwhelm" this matter because the common issues predominate.

Defendant's second argument is that small claims court is not just available but a "viable option" for TCPA class members. (Dkt. 28 at 17:4.) NCS goes so far as to suggest that "TCPA Plaintiffs generally do not need the class action procedure" because the statutory damages available to them are not small enough to render individual pursuit impractical. (*Id.* at 17:5–7.) It is no surprise that TCPA defendants would prefer defending their actions only in small claims court, as it would pit the few individual consumers willing to do so against national companies with resources to mount a legal defense, for a potential damage award of only $500 per violation.[2] In reality, no class members have an interest in individually controlling the prosecution of separate actions because the costs and effort required to do so would greatly outweigh the benefits of individual litigation. "[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quotation omitted); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 54-55 (D. Conn. 2000) (rejecting argument that individual actions would better serve class members in a TCPA claim).

---

[2] Any potential to treble damages for willful violation would be further outweighed by the cost of discovery required to make such a showing.

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.                              - 11 -
No. C19-1504RSL

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

Defendant cites to one case for the proposition that the paltry sum of $500 is adequate to incentivize consumers to pursue individual claims instead of class actions. (Dkt. 28 at 17:10–14) (citing *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 469 (S.D. Cal. 2014)). But, unsurprisingly, NCS cites to no such cases or examples of consumers doing so, because "[f]ive hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571 (W.D. Wash. 2012); *see also West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 306–07 (N.D. Cal. 2017) (citing *Agne*). Denying individuals the ability to pursue TCPA claims as class actions would enable companies like NCS to engage in rampant telemarketing or debt collection calls without bearing any significant cost or penalty for harming consumers.

In the TCPA context, class actions are "the optical means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015). While a case with highly individualized issues might warrant individual claims, Plaintiff's case is well-suited for class-wide resolution. Doing so will enable the Court to determine the rights of many thousands of consumers at once, without leaving individuals harmed by Defendant's actions with the undesirable choice of spending money, time, and effort to take a large corporation to court in pursuit of $500. A class action is the superior method of resolving the TCPA claims brought on behalf of Plaintiff and the thousands of consumers who were called in the same fashion, and individual issues do not present a management concern. Thus, the requirements of Rule 23 are satisfied here, and the Court should certify the class.

### D.     Plaintiff Does Not Seek An Extension—She Has Moved To Certify The Class.

Finally, Defendant argues that Plaintiff's request for additional discovery should be denied, either because she has not filed a timely motion or has not shown good cause. (Dkt. 28 at 18–19.) To be sure, Plaintiff has not requested an extension of her motion deadline, which is

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

- 12 -

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

what would require a motion and a showing of good cause—Swanson has filed her motion for

class certification in accordance with the schedule set by the Court on August 11, 2021. (*See*

Dkt. 26.) Instead, Plaintiff asks that, in the event that the Court determines further evidence is

necessary for the purposes of establishing any element of Rule 23 or to address any opposing

arguments made by Defendant, defer a ruling on this motion pending any necessary discovery

and supplemental briefing. *See* LR 23(i)(3) ("The court may . . . order postponement of the [class

certification] determination pending discovery or such other preliminary procedures as appear

appropriate and necessary in the circumstances.")[3]. Doing so would not create a "moving target"

because the same rule provided that "where the determination is postponed, a date will be fixed

by the court for renewal of the motion." *Id.*

As set forth in Plaintiff's motion, class certification is appropriate based on the discovery

that has been conducted. Plaintiff has filed her motion, and she has not made an untimely request

that the Court to extend her deadline. Rather, and only in the event that Court concludes that

more evidence is necessary to rule on the motion, Plaintiff asks that the Court postpone its

determination as appropriate to allow for any additional required preliminary procedures.

## IV.    CONCLUSION

The proposed Class is worthy of certification here. Plaintiff's claim is typical of the class,

and both she and her counsel will adequately protect the interests of absent class members.

Further, the Class shares common legal and factual issues that predominate over any individual

issues, and pursuit of Swanson's TCPA claims as a class action is both manageable and superior

to any alternative. Accordingly, the Court should grant Plaintiff's motion for class certification

and award such additional relief as the Court deems necessary, reasonable, and just.

---

[3] Following an update to the Local Rules effective January 26, 2022, three weeks after Plaintiff filed her motion, LR 23(i)(3) has been completely removed from the Local Rules, which no longer specify any time frame for the filing of a motion for class certification.

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.                                    - 13 -
No. C19-1504RSL

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

1

2

Dated: February 4, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROSALYNE SWANSON, individually, and on
behalf of all others similarly situated,

By:   /s/  Patrick H. Peluso
Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Matesky Law PLLC
1001 4th Avenue, Ste. 3200
Seattle, WA 98154
Ph: 206.701.0331

*Counsel for Plaintiff and the Proposed Class*

*pro hac vice*

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

- 14 -

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675

**Certificate of Service**

I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's CM/ECF System on counsel for all parties who have appeared in this matter.

    /s/ Patrick H. Peluso
Patrick H. Peluso
Dated:  February 4, 2022

PL'S REPLY IN SUPP. OF
MOT. FOR CLASS CERT.
No. C19-1504RSL

- 15 -

WOODROW & PELUSO, LLC
3900 E. Mexico Avenue, Ste. 300
Denver, CO 80210
Tel: (720) 213-0675