1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSALYNE SWANSON,

        Plaintiff,

    v.

NATIONAL CREDIT SERVICES, INC.,

        Defendant.

Case No. C19-1504-RSL

ORDER GRANTING
PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION

THIS MATTER is before the Court on plaintiff's "Motion for Class Certification." Dkt. # 27. Having reviewed the memoranda submitted by the parties and the remainder of the record, the Court finds as follows:[1]

## I. BACKGROUND

Defendant is a Washington debt collection company. Dkt. # 28 at 9. The Department of Education ("DOE") hired defendant to collect its federal student loan debts. Dkt. # 29 at ¶¶ 4-6 (Declaration of Nicholas Myrben). Defendant received borrowers' cell phone numbers from three different sources: (1) from DOE directly; (2) from Maximus, DOE's contractor, which maintains a Debt Management Collection System ("DMCS") with information regarding

---

[1] Defendant requests oral argument. Dkt. # 28 at 1. The Court concludes that oral argument is unnecessary to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 1

borrowers; and (3) from third party vendors hired by defendant to perform skip tracing services. *Id.* at ¶¶ 12-18.

On January 26, 2019, DOE placed plaintiff's unpaid student loan with defendant for collection. Dkt. # 29 at ¶ 24. That same day, defendant obtained plaintiff's number through skip tracing services performed by one of its vendors, Interactive Data LLC, also known as idiCORE ("IDI"). Dkt. # 27-1 at 16 (Exhibit A); Dkt. # 28 at 10. Previously, in November 2017, Maximus obtained plaintiff's number in a phone conversation with plaintiff regarding potential loan rehabilitation. Dkt. # 29-4 at 2 (Exhibit 4); Dkt. # 28 at 9. Although the recording of that conversation became available to defendant on January 26, 2019, defendant did not become aware of the recording or seek access to the file until almost one year later, when plaintiff filed the instant lawsuit. Dkt. # 27-1 at 14 (Exhibit A); Dkt. # 29-3 (Exhibit 3). Defendant also received a DMCS file from Maximus which included plaintiff's number, but not until after it had already acquired the number from IDI. Dkt. # 29 at ¶ 40.

Defendant called plaintiff on 23 different dates between January 31, 2019, and July 25, 2019. Dkt. # 29 at ¶ 38. Plaintiff alleges that defendant called her up to seven times a day. Dkt. # 1 at ¶ 15. Plaintiff claims that defendant uses an automatic telephone dialing system ("ATDS") and prerecorded calls or artificial voice calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* Dkt. # 1 at ¶ 3. Plaintiff seeks to certify and represent the following class (the "No Consent Class"):

> All persons in the United States who, from September 19, 2015 through the date notice is disseminated, (1) Defendant caused to be called; (2) on the person's

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 2

1

2

3

> cellphone; (3) using the same dialing equipment that was used to call Plaintiff; (4) for the purpose of collecting a debt; and (5) had their cellphone number obtained by NCS in the same way that NCS obtained Plaintiff's cellphone number.

4

5

6

7

8

9

> The following exclusions apply: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, contractors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicate on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons.

10

11

12

13

Dkt. # 27 at 2; Dkt. # 1 at ¶ 22. Plaintiff seeks declaratory relief, injunctive relief, actual damages, treble damages for willful or knowing violations, statutory damages, and reasonable attorney's fees. Dkt. # 1 at 7-8.

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendant denies using ATDS and artificial or prerecorded calls. Dkt # 28 at 10. Defendant argues that because it had constructive access to the recording of plaintiff's 2017 phone conversation with Maximus and received the DMCS file with plaintiff's number, it had plaintiff's prior express consent to receiving calls. *Id.* at 7. Defendant also states that its policy is to obtain express consent during its first live conversation with borrowers. *Id.* at 10. Since prior express consent is an affirmative defense to TCPA claims, defendant contends the class definition is overbroad, as it includes class members who gave their prior express consent as well as those who did not. *Id.* at 8. Defendant maintains that the class thus cannot be certified due to problems with commonality, typicality, and adequacy of representation. *Id.* at 8; 17. Defendant also states that determining whether each individual class member gave their prior

27

28

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 3

express consent to Maximus will disrupt predominance. *Id.* at 17. Separately, defendant avers that small claims court provides a superior forum for members of the putative class to litigate their TCPA claims. *Id.* at 22-23. For the reasons set forth below, the Court disagrees and grants class certification.

## II. THRESHOLD ISSUES

### A. Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff has stated a cause of action arising under the TCPA, which is a federal statute.

### B. Article III Standing

Defendant argues that the putative class is overbroad because it contains class members who gave their prior express consent to receiving phone calls, and that those members therefore lack requisite injury for Article III standing. Dkt. # 28 at 22. For the reasons outlined below, the class has standing to bring this case.

Article III, § 2 of the Constitution limits the federal judicial power to "cases" and "controversies." Standing is a judicially-created doctrine designed to protect the separation of powers concerns embodied in the text of Article III. *Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers.") (abrogated on other grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)); *see also INS v. Chadha*, 462 U.S. 919, 946 (1983) ("[S]eparation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 4

the documents that they drafted in Philadelphia in the summer of 1787.") (quoting *Buckley v. Valeo*, 424 U.S. 1, 124 (1976)). Standing protects separation of powers by ensuring that plaintiffs have an adequate stake in the outcome of the litigation. *TransUnion v. Ramirez*, -- U.S. ---, 141 S.Ct. 2190, 2203 (2021).

To satisfy Article III standing, a plaintiff must demonstrate that they have (1) suffered an injury in fact, which is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact exists where the plaintiff suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560. It is well-established that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 578 (emphasis in original). However, a plaintiff who sues under a statute providing a right to sue or creating new legal rights must still establish concrete injury. *See Spokeo v. Robins*, 578 U.S. 330, 341 (2016) (plaintiff alleging violation of the Fair Credit Reporting Act could not satisfy the injury-in-fact requirement of Article III by "alleg[ing] a bare procedural violation, divorced from any concrete harm."). The Ninth Circuit recently clarified that in class actions seeking injunctive or other equitable relief, only one plaintiff is required to demonstrate standing. *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022). However, in class actions seeking damages, all members must have Article III standing. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012). Since the

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 5

putative class seeks damages and injunctive relief in this case, the Court will consider whether all potential class members can establish concrete injury in fact sufficient to support standing.

In the unique context of the TCPA, alleging a violation of the statute itself satisfies the requirement of concrete injury in fact and is sufficient to support Article III standing. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (explaining that plaintiff, who alleged a violation of the TCPA, established concrete injury in fact, but affirming the district court's grant of summary judgment for defendant because plaintiff gave his prior express consent to be contacted). The TCPA "establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent." *Id.* In enacting the TCPA, Congress recognized that unsolicited phone calls and text messages "by their nature, invade the privacy and disturb the solicitude of their recipients." *Id.* (internal citations omitted). Additionally, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Id.* at 1044.

Here, plaintiff claims that defendant has violated the TCPA and that the alleged violation has caused "(a) aggravation, nuisance, and invasions of privacy…(b) wear and tear on [class members'] cellphones, (c) interference with the use of their phones, (d) consumption of battery life, (e) loss of value for [wireless plans], and (f) diminished use, enjoyment, value, and utility of their telephone plans." Dkt. # 1 at ¶ 17. The injuries alleged are consistent with the behavior Congress sought to deter in enacting the TCPA and are concrete enough to confer Article III standing for all putative class members. Otherwise, the mere assertion of an affirmative defense

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 6

based on express consent would make every TCPA action nonjusticiable.

### III. DEFINING THE CLASS

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 is based in equity practice. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Accordingly, the Court has significant discretion when making a class certification decision. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010). District courts in the Ninth Circuit are divided over whether a court may modify the definition of a putative class. *See Jammeh v. HNN Assocs.,* LLC, 2020 WL 5407864 at *9 (W.D. Wash. 2020) (slip copy) (collecting cases). However, courts in this jurisdiction have recognized their equitable power to reasonably modify a class definition to bring it within the ambit of Rule 23. *See, e.g.*, *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 694 (W.D. Wash. 2018) (adding a subclass); *see also Jammeh*, 2020 WL 5407864 at *9 ("[T]his court adopts an approach that permits modest modifications to the class definition so long as the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants.").

Plaintiff's proposed class definition is limited to persons who "had their cellphone number obtained by [defendant] in the same way that [defendant] obtained [plaintiff's] cellphone number." Dkt. # 27 at 4. Defendant argues this definition is overbroad because it acquired plaintiff's number in three different ways: through (1) skip tracing on January 26, 2019; (2) its constructive access to Maximus's files, including a recording of plaintiff providing her number to Maximus in November 2017; and (3) a DMCS file update from Maximus which

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 7

included plaintiff's number, received after plaintiff's number was already imported into

defendant's system. Dkt. # 28 at 13; Dkt. # 27-1 at 14 (Exhibit A). Defendant also asserts that it

obtained consent from some putative class members during live phone conversations, and that

those members should be excluded. Dkt. # 28 at 8; 10.

At this stage, the Court declines to make any substantive modifications to the class

definition, other than to clarify that putative class members whose numbers were obtained the

"same way" that defendant obtained plaintiff's number means persons whose numbers were

acquired through IDI's services *and* through Maximus's DMCS files or recorded conversations.

Whether defendant's right of access to Maximus's files containing borrower information was

sufficient to confer consent is an issue which is capable of classwide resolution. If defendant

prevails on this defense, then nothing here alters the Court's equitable power to modify or

decertify the class. *See* Fed. R. Civ. P. 23(c)(1)(C).

It is also inappropriate to modify the class based on defendant's live call consent defense.

Defendant has not offered a single case in support of its contention that requesting consent *after*

contacting borrowers constitutes "*prior* express consent" within the meaning of the TCPA. Dkt.

# 28. The Court will not create a subclass or refuse certification based on a defense that is

neither factually nor legally supported.

Notably, plaintiff's definition excludes borrowers who provided their number directly to

the original creditor, DOE, during the original transaction resulting in the debt. No one,

including plaintiff, argues that borrowers who provided their number directly to DOE did not

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 8

give adequate prior express consent. *See* Dkt. # 31 at 9. The Court's clarification should resolve

at least some of defendant's concerns regarding overbreadth. The rest are addressed below.

## IV. PREREQUISITES OF A CLASS

The party seeking certification must demonstrate that all four prerequisites of Rule 23(a)

are met, as well as one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*,

253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) "requires that plaintiffs demonstrate

numerosity, commonality, typicality, and adequacy of representation in order to maintain a class

action." *Mazza*, 666 F.3d at 588 (9th Cir. 2012).

Although the Court will not decide the underlying merits of a case at the class

certification stage, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974), it will undertake

a "rigorous analysis" to ensure the party seeking certification affirmatively complies with the

Rule, which frequently requires peeking at the merits of plaintiff's claims, *Wal-Mart Stores, Inc.*

*v. Dukes,* 564 U.S. 338, 350-51 (2011) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161

(1982)); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). In the Ninth

Circuit, "plaintiffs must prove the facts necessary to carry the burden of establishing that the

prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at

665. "[A]ny admissible evidence" may be offered by members of the putative class in support of

class certification. *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016)).

**A. Numerosity**

Rule 23(a)(1) tests whether "the class is so numerous that joinder of all members is

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 9

1  impracticable." In this case, defendant states there are at least 3,308 accounts where a phone

2  number was associated with both IDI and a DMCS file. Dkt. # 28 at 16. Defendant does not

3  argue that joinder of all putative class members is practicable. The Court finds numerosity is

4

5  satisfied.

6  **B. Commonality**

7

8      Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

9  23(a)(2). Although the plain text of the Rule constrains itself to searching for common

10  "questions," the key inquiry actually trains on whether the class proceeding will "generate

11

12  common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350

13  (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.

14  REV. 97, 132 (2009)) (alteration in original). However, this does not mean that every question

15

16  raised and answered must be shared in common; all that is required is "a single *significant*

17  question of law or fact." *Mazza*, 666 F.3d at 589 (emphasis added); *see also Castillo v. Bank of*

18  *Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020) ("Even a single common question of law or fact that

19

20  resolves a central issue will be sufficient to satisfy this mandatory requirement.").

21      Plaintiff alleges that the following questions are shared in common by class members:

22  (1) whether numbers acquired via skip tracing constitute valid prior express consent; (2) whether

23

24  numbers given to Maximus, then made available to defendant via recording or DMCS file,

25  constitute valid prior express consent; (3) whether the dialing equipment defendant used

26  constitutes an ATDS under the TCPA; and (4) whether defendant made prerecorded or artificial

27

28

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 10

voice calls. Dkt. # 27 at 7-8; Dkt. # 31 at 9-10. In response, defendant argues that plaintiff has not met her burden under Rule 23(a)(2) because individual inquiries as to whether each class member consented to the use of their phone number will predominate over issues held in common. Dkt. # 28 at 17-18.

The Court finds commonality satisfied in this case. Plaintiff has identified specific common contentions capable of classwide resolution. *Wal-Mart Stores, Inc.*, 564 U.S. 338, the seminal case on Rule 23(a)(2), is not apposite. There, a putative class of approximately 1.5 million current and former female employees of Wal-Mart sued their employer under Title VII, alleging that Wal-Mart's policy of giving discretion to local hiring managers in pay and promotion decisions led to discrimination against female employees. *Id.* at 343. In finding that commonality was not met, Justice Scalia explained that based on the sheer number of hiring managers exercising their individual judgment, "demonstrating the invalidity of one manager's use of discretion [would] do nothing to demonstrate the invalidity of another's." *Id.* at 355-56. Here, by contrast, the common questions posed by plaintiff can be resolved as to all class members in one stroke. Accordingly, to the extent that any problems of individualized determinations regarding consent may arise, that matter is more aptly addressed under 23(b)(3) predominance inquiry.

## C. Typicality

Typicality asks whether "the claims or defenses of the representative parties are typical of the clams or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 11

requirement is to assure that the interest of the named representative aligns with the interests of

the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (citing *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The analysis is guided by whether

(1) "other members have the same or similar injury," (2) "the action is based on conduct which

is not unique to the named plaintiffs," and (3) "other class members have been injured by the

same course of conduct." *Gonzalez v. United States Immigration and Customs Enf't*, 975 F.3d

788, 809 (9th Cir. 2020) (quoting *Hanon*, 976 F.2d at 508). "Rule 23(a) is 'permissive' and

requires nothing more than that a class plaintiff's claims be 'reasonably coextensive with those

of absent class members.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998)). The commonality and typicality analyses "tend to merge," as both ensure a class

proceeding will be economical and adequately protect the interests of absent class members.

*Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1041 (9th Cir. 2012) (citing *Wal-Mart*, 564

U.S. at 349, n. 5); *see also Amchem*, 521 U.S. at 626 (without explicitly addressing typicality,

the Court found that named plaintiffs in class settlement, who were all currently injured, were

inadequate representatives under 23(a)(4) because their injuries and the subsequent relief they

desired differed from absent putative class members who had been exposed to asbestos but had

no current manifestation of injuries).

      Under the permissive standards of Rule 23(a)(3), plaintiff's allegations are sufficient to

satisfy typicality. Plaintiff and unnamed class members "have the same or similar injury"

because they each allege unwanted contact in violation of the TCPA. Dkt. # 27 at 2. The "action

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 12

is based on conduct not unique to the named plaintiffs" because defendant allegedly used the same dialing equipment to contact class members and obtained the numbers at issue through the same processes (*i.e.*, through IDI skip tracing and Maximus). *Id.* Finally, absent class members have allegedly been "injured by the same course of conduct"—that is, by defendant's contact without consent, using an ATDS and artificial or prerecorded calls. *Id.*

Defendant argues that plaintiff is an atypical representative because she provided her express consent to being contacted by giving her number to Maximus, while other members of the class, whose numbers were simply obtained from IDI, did not. Dkt. # 28 at 12; 15 ("Plaintiff is not typical of any number called without consent obtained via third-party vendor only."). However, defendant's concerns about typicality are addressed by the Court's clarification that the class definition only extends to those persons whose phone numbers defendant obtained from both IDI and Maximus. Thus, defendant's argument that plaintiff consented to contact by providing her number to Maximus can be tested against the class as a whole.

**D. Adequate Representation**

The representative parties—meaning the named plaintiff as well as class counsel—must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also* Fed. R. Civ. P. 23(g)(4). The purpose of the adequacy of representation inquiry is to ensure due process for absent class members. *Hansberry v. Lee*, 311 U.S. 32, 43 (1940) (the requirements of due process and full faith and credit are satisfied for absent class members as long as they are adequately represented by the named plaintiff); *Taylor v. Sturgell*, 553 U.S. 880, 900-01 (2008)

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 13

(describing the limits on nonparty preclusion as based on concerns grounded in adequacy of representation, which, "[i]n the class action context . . . are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23.").

Rule 23(a)(4) is thus designed to screen conflicts of interest between representatives and absent class members. *See Amchem*, 521 U.S. at 625 (citing *General Tel. Co.*, 457 U.S. at 157). Conflicts must be "actual," meaning supported by record evidence, not purely speculative. *See, e.g.*, *Social Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) (finding that where district court improperly relied on conflict not supported in the record, "[m]ere speculation as to conflicts that may develop… [was] insufficient to support denial of initial class certification."). Significant conflicts undermine the ability of the representative party to competently represent absent class members. *See, e.g., Amchem*, 521 U.S. at 626 (divergent concerns regarding settlement payouts between representative parties and absent class members warranted decertification under 23(a)(4)). However, when named plaintiffs or class counsel are conflicted, the presence of non-conflicted representatives may establish adequate representation. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) (certifying class settlement because two of the seven class representatives did not have conflicting incentive agreements). In addition to evaluating whether any conflicts exist, 23(a)(4) analyzes the competency of representative parties, including whether they will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 928, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020).

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 14

1
2
3
4
5

To establish adequacy, named plaintiffs must (1) "be part of the class" and (2) "possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Here, as previously explained, the named plaintiff is part of the class she seeks to represent and possesses the same interest and suffered the same alleged injury as absent class members. *See supra* Part IV B.; Part IV C. (discussing commonality and typicality). Thus, there are no apparent conflicts between plaintiff and absent class members. Moreover, defendants have put forth no evidence indicating that plaintiff will not serve as a competent class representative. To the contrary, the record suggests that plaintiff has taken her duty as a class representative seriously and is prepared to vigorously prosecute the action on behalf of the class. Dkt. # 27; Dkt. # 31.

Defendants do not challenge the adequacy of class counsel to represent absent class members. The Court does not detect a conflict of interest in the record, and *pro hac vice* counsel has submitted evidence of their experience litigating similar TCPA class actions. Dkt. # 27-2 (Exhibit B). Therefore, the Court finds that both plaintiff and counsel are adequate class representatives.

## V. MAINTENANCE OF A CLASS

### A.  Rule 23(b)(3) Requirements

In addition to meeting all four prerequisites of Rule 23(a), a plaintiff must also meet one of the three requirements of 23(b). The Court considers this motion under Rule 23(b)(3).

An "adventuresome innovation" created specifically with damages class actions in mind,

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 15

Rule 23(b)(3) imposes two additional requirements on a putative class beyond the four prerequisites of 24(a): predominance and superiority. *Amchem*, 521 U.S. 615 (quoting Kaplan, *A Prefatory Note*, 10 B.C. IND. & COM. L.REV. 497, 497 (1969)). These additional requirements reflect the concern that, in actions for money damages, classwide adjudication may "not as clearly [be] called for as…in Rule 23(b)(1) and (b)(2) situations [yet] may nevertheless be convenient and desirable." *Id.* (internal quotations and citations omitted). Accordingly, the notification requirements of 23(b)(3) are heightened and class members' right to opt-out is mandatory. *Compare* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable…including individual notice to all members who can be identified through reasonable effort."), *with* Fed. R. Civ. P. 23(c)(1)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (discussing the requirements of notice and opt out in a Rule 23(b)(3) action).

## 1. Predominance

Under the Rule 23(b)(3) predominance inquiry, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577

U.S. at 453 (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:50, 196-197 (5th ed.

2012 (internal quotations omitted))). Although somewhat similar to the commonality

prerequisite of 23(a)(2), commonality and the predominance requirement of 23(b)(3) must be

analyzed separately. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("Rule 23(b)(3)'s

predominance criterion is even more demanding than 23(a)."); *Amchem*, 521 U.S. at 624 (1997)

(finding that even if named and unnamed plaintiffs' shared asbestos exposure was sufficient to

satisfy commonality, too many individual issues regarding the circumstances and subsequent

effects of exposure predominated to uphold class certification). Where individual inquiries

would overwhelm common issues, certification under Rule 23(b)(3) is inappropriate. *Amchem*,

521 U.S. at 623 (finding disparate circumstances of exposure to asbestos-containing products as

well as differences in state law undermined predominance). However, the class may be certified

notwithstanding the existence of other important issues which may need to be litigated on an

individual basis as long as the central issues in an action are common to the class and

predominate. *Tyson*, 577 U.S. at 453 (explaining that as long as the central issues are common

and predominate, other issues that need to be tried individually, including damages or

affirmative defenses, will not defeat a Rule 23(b)(3) motion).

The Court finds that common issues central to resolution of plaintiff's claims

predominate over individualized inquiries in this case. Those common issues are: (1) whether

numbers acquired via skip tracing constitute valid prior express consent; (2) whether numbers

given to Maximus, then made available to defendant via recording or DMCS file, constitute

1  valid prior express consent; (3) whether the dialing equipment defendant used constitutes an

2  ATDS under the TCPA; and (4) whether defendant made prerecorded or artificial calls under the

3

4  TCPA. Dkt. # 27 at 7-8; Dkt. # 31 at 9-10; *see supra* Part IV B. (discussing commonality).

5  These issues predominate over any individualized determinations as to defendant's affirmative

6  consent defense.

7
   Defendant states that predominance is defeated "[w]hen prior express consent is not
8

9  provided in a consistent manner." Dkt. # 28 at 17. Defendant argues consent was not uniformly

10 secured, but was instead obtained in two ways that will require individualized consideration:

11
   namely, via live call or through access to Maximus's files. *Id.* at 19.
12

13     As aforementioned, the fact that defendant argues it secured post hoc consent from some

14 class members during a live phone conversation after already obtaining their numbers from IDI

15
   and Maximus does not destroy predominance. *See Meyer*, 707 F.3d at 1042 ("Pursuant to the
16

17 FCC ruling, prior express consent is consent to call a particular telephone number in connection

18 with a particular debt that is given *before* the call in question is placed.") (emphasis added); *see*

19
   *supra* Part III (discussing the class definition).
20

21     The question of whether access to Maximus's files was sufficient to confer consent under

22 the TCPA is a closer legal question, but not one that overcomes predominance at this stage. If

23
   defendant prevails on this consent defense as to only a subset of class members (for instance, if
24

25 defendant had consent as to numbers it obtained via DMCS file update before receiving the

26 number from IDI), then the Court may revisit the issue of predominance at that time and adjust

27

28

the class accordingly. However, the issue of whether defendant can show that its right of access to Maximus's files constituted prior express consent is one that is currently capable of classwide resolution. Accordingly, while the affirmative defenses defendant presses will no doubt be important to the outcome of the litigation, they presently do not undercut the central common issues in this case.

### 2.  Superiority

In addition to finding that common questions of law or fact predominate, the Court must also find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, the Court must consider the following list of non-exhaustive factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Generally, where the individual damages suffered are small, the first factor weighs in favor of certification. *Zinser*, 253 F.3d 1190. In the context of TCPA violations, individual damages of $500 are considered sufficiently small to warrant class adjudication. *See, e.g.*, *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571 (W.D. Wash. 2012); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007). Thus, the first factor weighs in favor of plaintiff. Second, there is no evidence in the record that any individual class members have commenced separate actions against defendant. This also weighs in plaintiff's favor.

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 19

Defendant's arguments focus on the third and fourth factors. Specifically, defendant asserts that class adjudication will prove unmanageable and that small claims court is a superior forum for these claims. Dkt. # 28 at 23. For the reasons given above, *supra* Part V A. 1., classwide adjudication of the legal issues regarding consent and whether, if consent was not provided, defendant improperly used ATDS and/or made prerecorded or artificial calls do not present intractable manageability issues for the Court.

As to the fourth factor, the Court is unconvinced that small claims court provides a superior forum for resolution of these claims. Defendant argues that prosecuting individual TCPA actions in small claims court is superior to class litigation because plaintiffs can avoid attorney's fees. Dkt. # 28 at 23-24. Although plaintiffs can litigate TCPA actions in small claims court *pro se* and thus avoid attorney's fees, there is no indication that any class members have attempted to pursue a TCPA claim without the assistance of counsel. Moreover, additional costs and burdens attend *pro se* litigation which might deter an individual borrower from prosecuting a creditor corporation. Finally, the possibility of an award of attorney's fees in this class action is not likely to be a major consideration for putative class members who otherwise have shown no interest in pursuing the claim on their own: the Court retains discretion in setting the amount of attorney's fees awarded. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees."); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 158 (2016) (discussing award of attorney's fees under the TCPA).

### VI. APPOINTMENT OF CLASS COUNSEL

Under Rule 23(g)(1), a Court must appoint class counsel in a class certification order. The factors the Court shall consider in appointing counsel include:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (g)(1)(B). Here, plaintiff's counsel, Patrick Peluso and Stephen L. Woodrow of Woodrow & Peluso, LLC, and Michael P. Matesky, II of Matesky Law PLLC, seek appointment as class counsel. Dkt. # 27. There is significant evidence in the record of the work counsel has done in bringing this case, and counsel's experience litigating TCPA class actions and settlements is also well-documented. Dkt. # 27-2 (Exhibit B). The Court therefore finds plaintiff's counsel adequate and enters appointment in this case, contingent upon counsel's continued observation of their respective responsibilities as counsel *pro hac vice* and local counsel. Local Rules W.D. Wash. LCR 83.1(d).

### VII. CONCLUSION

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for class certification, Dkt. # 27, is GRANTED pursuant to the modifications set forth in this Order;

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 21

1

2.  Patrick H. Peluso and Steven L. Woodrow of Woodrow & Peluso, LLC, and Michael

2

Matesky of Matesky Law, PLLC, are appointed as class counsel; and

3

4

3.  Rosalyne Swanson is appointed as class representative.

5

6

Dated this 31st day of May, 2022.

7

8

9

MRt S Lasnik

10

Robert S. Lasnik
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION - 22